Per Curiam:
This case involves a contract which was terminated by the Contracting Officer, under the termination for default provision, for default. The contractor failed to appeal to the Armed Services Board of Contract Appeals and now claims that he was deterred from such an appeal as a result of threats and promises made by the Contracting Officer. The trial commissioner who heard the testimony has found that plaintiff’s allegations as to these threats and promises have not been proved. The court adopts the com *532 missioner’s findings and concludes that since plaintiff failed to exhaust the required administrative remedies (United States v. Blair, 321 U.S. 730 (1944); United States v. Holpuch, 328 U.S. 234 (1946) and Henry E. Wile Co. v. United States, 144 Ct. Cl. 394, 169 F. Supp. 249 (1959)), it cannot pursue its claim in this court. Plaintiff is therefore not entitled to recover and plaintiff’s petition is dismissed.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner William E. Day and the briefs and argument'of counsel, makes findings of fact as follows:
1. The plaintiff, a corporation organized and existing under the laws of the State of Illinois until its liquidation in 1953, had its principal office and factory at Chicago, Illinois.
2. The defendant, through the Department of the Army, Chicago Quartermaster Depot, in late October 1950, solicited bids for 2,400,000 sets of prefabricated (but unassembled) parts for 5-gallon gasoline cans.
3. The plaintiff, on November 3, 1950, submitted its bid for the furnishing of the full quantity of units as to which bids had been requested.
4. On December 18, 1950, the plaintiff was awarded Contract DA-11-009 QM-4606 (hereinafter referred to as Contract No. 4606) for 1,200,000 sets of prefabricated parts for 5-gallon gasoline cans, at a unit price of $0,714, or a total consideration of $856,800.
5. The delivery schedule in Contract No. 4606 provided as follows:
1951
16 Jan.-15 Feb. 16 Feb-15 Mar. 16 Mar.-15 Apr.
100,000 100,000 250,000
16 Apr.-15 May 16 May-15 June 16 June-15 July
250,000 250,000 250,000
This delivery schedule includes an extension of 15 calendar days in delivery period due to inability to forward notice of award within specified time limit.
*533 6. The schedule attached to the invitation to bid provided, at page 3, for deliveries as follows:[1]
Schedule of Deliveries : The supplies will be delivered at the rates indicated below:
1951
1-31 Tan. 1-28 Feb. 1-31 Mar. 1-30 Apr. 1-31 May 1-3Ó June Unit
100,000 100,000 250,000 250,000 250,000 250,000 Set
The foregoing delivery requirements are predicated on the assumption that the Government will forward notice of award at least 60 calendar days prior to the first delivery date.. The Government will extend each delivery period in the delivery schedule set forth herein by the number of calendar days that this assumption is not realized.
(For the purpose oe the foregoing article, the first DELIVERY DATE SHALL BE DEEMED TO MEAN THE LAST DAY OF THE FIRST DELIVERY PERIOD).
7. The contract provided, in pertinent part, as follows:
Schedule
* * ❖ iji *
Inspection and Acceptance : Saving and reserving to the Government all rights under the Inspection provision, the procedure of inspection and acceptance at contractor’s plant will be followed.
Shipment must not be made prior to inspection by either the Chief, QM Inspection Division, Chicago Quartermaster Depot or his authorized representatives. Contractor must notify the Chief, QM Inspection Division, Chicago Quartermaster Depot, 1819 West Pershing Boad, Chicago 9, Illinois, when the items as called for herein are ready for inspection. Items should not be
PACKED IN SEALED CONTAINERS PRIOR TO INSPECTION. (If practicable 2 weeks advance notice is requested.) Should shipping point differ from that which is shown herein, contractor must so advise both the Contracting Officer and the Chief, QM Inspection Division, Chicago Quartermaster Depot.
* üc ü¡ *
*534 General Provisions
1.- Definitions
As used throughout this contract, the following térms shall have the meanings set forth below:
{a) The term “Secretary” means the Secretary, the Under Secretary, or any Assistant Secretary of the Department, and the head or any assistant head of the executive agency; and the term “his duly authorized representative” means any person or persons or board pother than the Contracting Officer) authorized to act for the Secretary.
(5) The term “Contracting Officer” means the person executing this contract on behalf of the Government, and any other officer or civilian employee who is a properly designated Contracting Officer; and the term includes, except as otherwise provided in this contract, the authorized representative of a Contracting Officer acting within the limits of Ms authority, (c) Except as otherwise provided in this contract, the term “subcontracts” includes purchase orders under this contract.
2. Changes
The Contracting Officer may at any time, by a written order, and without notice to the sureties, make changes, within the general scope of tMs contract, in any one or more of the following: (i) drawings, designs, or specifications, where the supplies to be furnished are to be specially manufactured for the Government in accordance therewith; (ii) method of sMpment or packing; and (iii) place of delivery. If any such change causes an increase or decrease in the cost of, or the time required for, performance of this contract, an equitable adjustment shall be made in the Contract price or delivery schedule, or both, and the contract shall be modified in writing accordingly. Any claim by the Contractor for adjustment under tMs clause must be asserted within 30 days from the date of receipt by the Contractor of the notification of change: Provided, however, That the Contracting Officer, if he decides that the facts justify such action, may receive and act upon any such claim asserted at any time prior to final payment under tMs contract. Failure to agree to any adjustment shall be a dispute concerning a question of fact within the meaning of the clause of tMs contract entitled “Disputes.” How *535 ever, nothing in this clause shall excuse the Contractor from proceeding with the contract as changed.
3. Extras
Except as otherwise provided in this contract, no payment for extras shall be made unless such extras and the price therefor have been authorized in writing by the Contracting Officer.
4. Variation in Quantity
No variation in the quantity of any item called for by this contract will be accepted unless such variation has been caused by conditions of loading, shipping, or packing, or allowances in manufacturing processes, and then only to the extent, if any, specified elsewhere in this contract.
5. Inspection

% % % % %

(5) In case any supplies or lots of supplies are defective in material or workmanship or otherwise not in conformity with the requirements of this contract, the Government shall have the right either to reject them (with or without instructions as to their disposition) or to require their correction. Supplies or lots of supplies which have been rejected or required to be corrected shall be removed or corrected in place, as requested by the Contracting Officer, by and at the expense of the Contractor promptly after notice, and shall not again be tendered for acceptance unless the former tender and either the rejection or requirement of correction is disclosed. If the Contractor fails promptly to remove such supplies or lots of supplies, when requested by the Contracting Officer, and to proceed promptly with the replacement or correction thereof, the Government either (i) may by contract or otherwise replace or correct such supplies and charge to the Contractor the cost occasioned the Government thereby, or (ii) may terminate this contract for default as provided in the clause of this contract entitled “Default.” Unless the Contractor elects to correct or replace the supplies which the Government has a right to reject and is able to make such correction or replacement within the required delivery schedule, the Contracting Officer may require the delivery of such supplies at a reduction in price which is equitable under the circumstances. Failure to agree to such reduction of price shall be a dispute concerning a question of fact within the meaning of the clause of this contract entitled “Disputes.”
*536 (o) If any inspection or test is made by the Government on the premises of the Contractor or a subcontractor, the Contractor without additional charge shall provide all reasonable facilities and assistance for the safety and convenience of the Government inspectors in the performance of their duties. If Government inspection or test is made at a point other than the premises of the Contractor or a subcontractor, it shall be at the expense of the Government: Provided, That in case of rejection the Government shall not be liable for any reduction in value of samples used in connection with such inspection or test. All inspections and tests by the Government shall be performed in such a mamier as not to unduly delay the work. The Government reserves the right to charge to the Contractor any additional cost of Government inspection and test when supplies are not ready at the time such inspection and test is requested by the Contractor. Final acceptance or rejection of the supplies shall be made as promptly as practicable after delivery, except as otherwise provided in this contract; but failure to inspect and accept or reject supplies shall neither relieve the Contractor from responsibility for such supplies as are not in accordance with the contract requirements nor impose liability on the Government therefor.
(d) The inspection and test by the Government of any supplies or lots thereof does not relieve the Contractor from any responsibility regarding defects or other failures to meet the contract requirements which may be discovered prior to final acceptance. Except as otherwise provided in this contract, final acceptance shall be conclusive except as regards latent defects, fraud, or such gross mistakes as amount to fraud.
(e) The Contractor shall provide and maintain an inspection system acceptable to the Government covering the supplies hereunder. Records of all inspection work by the Contractor shall be kept complete and available to the Government during the performance of this contract and for such longer period as may be specified elsewhere in this contract.
‡ ^ ‡
11. Default
(a) The Government may, subject to the provisions ■of paragraph (5) below, by written Notice of Default to the Contractor terminate the whole or any part of this contract in any one of the following circumstances:
*537 (i) if the Contractor fails to make delivery of the supplies or to perform the services within the time specified herein or any extension thereof; or
(ii) if the Contractor fails to perform any of the other provisions of this contract, or so fails to make progress as to endanger performance of this contract in accordance with its terms, and in either of these two circumstances does not cure such failure within a period of 10 days (or such longer period as the Contracting Officer may authorize in writing) after receipt of notice from the Contracting Officer specifying such failure.
(5) The Contractor shall not be liable for any excess costs if any failure to perform the contract arises out of causes beyond the control and without the fault or negligence of the Contractor. Such causes include, but are not restricted to, acts of God or of the public enemy, acts of the Government, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, unusually severe weather, and defaults of subcontractors due to any of such causes unless the Contracting Officer shall determine that the supplies or services to be furnished by the subcontractor were obtainable from other sources in sufficient time to permit the Contractor to meet the required delivery schedule.
(c) In the event the Government terminates this contract in whole or in part as provided in paragraph (a) of this clause, the Government may procure, upon such terms and in such manner as the Contracting Officer may deem appropriate, supplies or services similar to those so terminated, and the Contractor shall be liable to the Government for any excess costs for such similar supplies or services, Provided, That the Contractor shall continue the performance of this contract to the extent not terminated under the provisions of this clause.
(d) If this contract is terminated as provided in paragraph (a) of this clause, the Government, in addition to any other rights provided in this clause, may require the Contractor to transfer title and deliver to the Government, in the manner and to the extent directed by the Contracting Officer, (i) any completed supplies, and (ii) such partially completed supplies and materials, parts, tools, dies, jigs, fixtures, plans, drawings, information, and contract rights (hereinafter called “manufacturing materials”) as the Contractor has specifically produced or specifically acquired for the performance of such part of this contract as has been terminated; and *538 the Contractor shall, upon direction of the Contracting Officer, protect, and preserve property in possession of the Contractor in which the Government has an interest. The Government shall pay to the Contractor the contract price for completed supplies delivered to and. accepted by the Government, and the amount agreed upon by the Contractor and the Contracting Officer for manufacturing materials delivered to and accepted by the Government and for the protection and preservation-of property. Failure to agree shall be a dispute concerning a question of fact within the meaning of the clause-of this contract entitled “Disputes.”
(e) If, after notice of termination of this contract, under the provisions of paragraph (a) of this clause, it. is determined that the failure to perform this contract, is due to causes beyond the control and without the fault or negligence of the Contractor pursuant to the provisions of paragraph (5) of this clause, such Notice of Default shall be deemed to have been issued pursuant to. the clause of this contract entitled “Termination for Convenience of the Government,” and the rights and obligations of the parties hereto shall in such event be governed by such clause. {Except as otherwise provided in this-oontraet, this paragraph (e) applies only if this contract'is with a military department.')
(/) The rights and remedies of the Government provided in this clause shall not be exclusive and are in-addition to any other rights and remedies provided bylaw or under this contract.
12. DisruTES
Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this; contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce-his decision to writing and mail or otherwise furnish, a copy thereof to the Contractor. Within 30 days from the date, of receipt of such copy, the Contractor may-appeal by mailing or otherwise furnishing to the Contracting Officer a written appeal addressed to the Secretary, and the decision of the Secretary or his duly-authorized representative for the hearing of such appeals-shall be final and conclusive: Provided, That if' no such appeal is taken, the decision of the Contracting Officer-shall be final and conclusive. In connection with any appeal proceeding under this clause, the Contractor shall be afforded an opportunity to be heard and to offer-evidence in support of its appeal. Pending final decision of a dispute hereunder, the Contractor shall pro- *539 c.eed diligently with the performance of the contract and in accordance with the Contracting Officer’s, decision.
13. Notice and Assistance Regarding Patent Infringement ■
(а) The Contractor agrees to report to the Cohtract-ing Officer, promptly -and in reasonable written detail, each claim of patent infringement based on the performance of this contract and asserted against' it, or against any of its subcontractors if it has notice thereof.
(б) In the event of litigation against the Government on acconnt of any claim of infringement arising out of the performance of this contract: or out of the use of any supplies furnished or construction work performed hereunder,, the Contractor agrees that it will furnish to the Government, upon request, all evidence and information in its possession pertaining to the defense of such litigation. Such information shall be furnished at the expense of the Government except in those cases in which the Contractor has agreed to indemnify the Government against the claim being asserted.
•!» , , H* jfc
21. Termination for Convenience of the Government
(a) The performance of work under this contract may be terminated, by the Government in accordance with this clause, in whole, or from time to time in part, whenever the Contracting Officer shall determine that such termination is in the best interests of the Government. Any such termination shall be effected by delivery to the Contractor of a Notice of Termination specifying the extent to which .performance of work under the contract is terminated, and the date' upon which, such termination becomes effective.
(tí) After receipt of a Notice of Termination, and except, as otherwise directed by the Contracting Officer, the Contractor shall (1) stop work under the contract on the date, and to the extent specified in the Notice of Termination; (2) place no further orders or subcontracts for materials, services or facilities except as may be necessary for completion of such portion of the work under the contract is terminated, and the date, upon all. orders and subcontracts to the extent that they relate to the performance of work terminated by the Notice of Termination; (4) assign to the Government, hi the manner, at the times, and to the extent directed by the Contracting Officer, all of the right, title and interest of the Contractor under the orders and subcontracts *540 so terminated; (5) settle all claims arising out of such termination of orders and subcontracts, subject to the approval or ratification of the Contracting Officer, which approval or ratification shall be final for all the purposes of this clause; (6) transfer title and deliver to the Government, in the manner, at the times, and to the extent, if any, directed by the Contracting Officer, (i) the fabricated or unfabricated parts, work in process, completed work, supplies, and other material produced as a part of, or acquired in connection with the performance of the work terminated by the Notice of Termination, and (ii) the completed or partially completed plans, drawings, information, and other property which, if the contract had been completed, would have been required to be furnished to the Government; (7) use its best efforts to sell, in the manner, at the times, to the extent, and at the price or prices directed or authorized by the Contracting Officer, any property of the types referred to in provision (6) of this paragraph, provided, however, that the Contractor (i) shall not be required to extend credit to any purchaser, and (ii) may keep any such property at a price or prices approved by the Contracting Officer; and provided further that the proceeds of any such transfer or disposition shall be applied in reduction of any payments to be made by the Government to the Contractor under this contract or shall otherwise be credited to the price or cost of the work covered by this contract or paid in such other manner as the Contracting Officer may direct; (8) complete performance of such part of the work as shall not have been terminated by the Notice of Termination; and (9) taire such action as may be necessary, or as the Contracting Officer may direct, for the protection and preservation of the property related to this contract which is in the possession of the Contractor and in which the Government has or may acquire an interest.
(c) After receipt of a Notice of Termination, the Contractor shall submit to the Contracting Officer its termination claim, in the form prescribed by the Contracting Officer. Such claim shall be submitted promptly but in no event later than one year from the effective date of termination, unless one or more extensions in writing are granted by the Contracting Officer upon request of the Contractor made in writing within such one year period or authorized extension thereof. Upon failure of the Contractor to submit its termination claim within the time allowed, the Contracting Officer shall determine, on the basis of information available *541 to him, the amount, if any, due to the Contractor by reason of the termination.
(d) Subject to the provisions of paragraph (c), the Contractor and the Contracting Officer may agree upon the whole or any part of the amount or amounts to be paid to the Contractor by reason of the total or partial termination of work pursuant to this clause, which amount or amounts may include a reasonable allowance for profit, but only on work done in connection with the terminated portion of the contract. The contract sba.11 be amended accordingly, and the Contractor shall be paid the agreed amount. Such amendment shall be final and conclusive upon the Contractor and the Government. Nothing in paragraph (e) of this clause, prescribing the amount to be paid to the Contractor in the event of a failure of the Contractor and the Contracting Officer to agree upon the whole amount to be paid to the Contractor ¡by reason of the termination of work pursuant to this clause, shall be deemed to limit, restrict, or otherwise determine or affect the amount or amounts which may be agreed upon to be paid to the Contractor pursuant to this paragraph (d).
(e) In the event of the failure of the Contractor and the Contracting Officer to agree as provided in para-Íraph (d) upon the whole amount to be paid to the lontractor by reason of the termination of work pursuant to this clause, the Government, but without duplication of any amounts agreed upon in accordance with paragraph (d), shall pay to the Contractor the amounts determined as follows:
(1) For completed supplies accepted by the Government and not theretofore paid for, a sum equivalent to the aggregate price for such supplies computed in accordance with the price or prices specified in the contract, appropriately adjusted for any saving of freight or other charges;
(2) The total of:
(i) the costs incurred in the performance of the work terminated, exclusive of any costs attributable to supplies paid, or to be paid for under paragraph (e) (1) hereof;
(ii) the cost (which may include a reasonable allowance for profit to subcontractors or vendors, but only on work done in connection with the terminated portion of any subcontract or order) of settling and pay *542 ing claims arising out of the termination of work under subcontracts or orders, as provided in paragraph, (b) (5) above, which are properly chargeable to the terminated portion of the contract (exclusive of amounts paid or payable on account of supplies or materials delivered or services furnished by subcontractors or vendors prior to the effective date of the Notice of Termination, which amounts should be included in the costs payable under (i) above), provided that:
(A) Each such claim has been settled with the written approval of the Contracting Officer; or
(33) If a final judgment has been rendered against the Contractor, or a subcontractor or vendor, by a court of competent jurisdiction determining the liability of the Contractor, subcontractor or vendor with respect to* any such claim, the Contracting Officer has determined that such judgment or a part thereof is allocable to-the terminated portion of the contract
(In order for a judgment to be-allowable under this subparagraph (ii), the Contractor, or subcontractor or vendor concerned, must have-given the Contracting Officer prompt notice of the initiation of the proceedings in which such judgment was rendered and offered in writing-to give the Government complete-control of the defense of the proceedings, and must have diligently defended the suit or, if the Government has assumed control of the-defense of the proceedings, must-have rendered such reasonable assistance as has been requested by the-Govemment. If such judgment includes amounts for loss of anticipatory profits or consequential damages, such amounts will not be* allowable under this subpara-graph) ;
*543 (iii) a sum equal to 2% of that part of the amount determined under (i) which represents the cost of articles and materials not processed by the Contractor, plus a sum equal to 8% of the remainder of such amount, but the aggregate of such sums shall not exceed 6% of the whole of the amount determined under (i) above.
(3) The reasonable costs of settlement, including accounting, legal, clerical, and other expenses reasonably necessary for the preparation of settlement claims and supporting data with respect to the terminated portion of the contract and for the termination and settlement of subcontracts thereunder, together with reasonable storage, transportation, and other costs incurred in connection with the protection or disposition of termination inventory.
The total sum to be paid to the Contractor under (1) and (2) of this paragraph (e) shall not exceed the total contract price as reduced by the amount of payments otherwise made and as further reduced by the contract price of work not terminated. Except for normal spoilage, and except to the extent that the Government shall have otherwise expressly assumed the risk of loss, there shall be excluded from the amounts payable to the Contractor as provided in paragraph (e)(1) and paragraph (e) (2) (i), any amounts allocable to or payable in connection with property which is destroyed, lost, stolen or damaged so as to become undeliverable to the Government, or to a buyer pursuant to paragraph (b) (7).
(f) The Contractor shall have the right of appeal, under the clause of this contract entitled “Disputes,” from any determination of the amount due to the Contractor made by the Contracting Officer under paragraphs (c) or (e) above, except that if the Contractor has failed to submit its claim within the time provided in paragraph (c) above and has failed to request extension of such time, he shall have no such right of appeal. In any. case where the Contracting Officer has made a determination of the amount due under paragraph (c) or (e) above, the Government shall pay to the Contractor the following: (i) if there is no right of appeal hereunder or if no timely appeal has been taken, the amount so determined by the Contracting Officer, or (ii) if an *544 appeal has been taken, the amount finally determined on such appeal; any such determination being final and conclusive upon the Contractor and the Government.
(g) In arriving at the amount due the Contractor under this clause there shall be deducted (1) all un-liquidated advance or other unliquidated payments on account theretofore made to the Contractor, (2) any claim which the Government may have against the Contractor in connection with this contract, and (3) the agreed price for, or the proceeds of sale of, any materials, supplies or other things kept by the Contractor or sold, pursuant to the provisions, of this clause, and not otherwise recovered by or credited to the Government.
(h) If the termination hereunder be partial, prior to the settlement of the terminated portion of this contract, the Contractor may file with the Contracting Officer a request in writing for an equitable adjustment of the price or prices specified in the contract relating to the continued portion of the contract (the portion not terminated by the Notice of Termination), and such equitable adjustment as may be agreed upon shall be made in such price or prices.
(i) The Government may from time to time, under such terms and conditions as it may prescribe, make partial payments and payments on account against costs incurred by the Contractor in connection with the terminated portion of this contract whenever in the opinion of the Contracting Officer the aggregate of such payments shall be within the amount to which the Contractor will be entitled hereunder. If the total of such payments is in excess of the amount finally agreed or determined to be due under this clause, such excess shall be payable by the Contractor to the Government upon demand, together with interest computed at the rate of 6% per annum, for the period from the date such excess payment is received by the Contractor to the date on which such excess is repaid to the Government.
(j) Any determination of costs under paragraph (c) or (e) hereof shall be governed by the Cost Principles set forth in Section XV of the Armed Services Procurement Regulation, as in effect on the date of this contract.
(k) Unless otherwise provided for in this contract, or by applicable statute, the Contractor, from the effective date of termination and for a period of three years after final settlement under this contract, shall preserve and make available to the Government at all reasonable times at the office of the Contractor, but without expense *545 to the Government, all its books, records, documents, and other evidence bearing on the costs and expenses of the Contractor under this contract and relating to the work terminated hereunder, or, to the extent approved by the Contracting Officer, photographs, microphotographs, or other authentic reproductions thereof.
Hs ‡ # Ht H*
8. By Supplemental Agreement No. 1, entered into between the parties on March 19,1951, by reason of specification changes covering packaging for export, the unit cost of each can was increased from $0,714 to $0.97077. This supplement made no change in the contract delivery dates.
9. On July 17,1951, the contracting officer, Major Cloyce H. Johnston, sent a telegram to the plaintiff, which reads as follows:
IN ACCORDANCE WITH GENERAL PROVISION ELEVEN ENTITLED “DEFAULT” OF CONTRACT NUMBER DA 11-0 0 9 QM-4 606 DATED IS DEC 50 SUCH CONTRACT IS HEREBY TERMINATED FOR DEFAULT AS THEREIN PROVIDED AS TO ALL UNDELIVERED QUANTITIES AS OF THE RECEIPT OF THIS TELEGRAM YOU ARE ADVISED THAT SUPPLIES SIMILAR TO THOSE TERMINATED WILL BE PROCURED FROM OTHER SOURCES AND YOU WILL BE LIABLE TO THE GOVERNMENT FOR THE EXCESS COST THEREOF IF ANY AS PROVIDED IN SUBPARAGRAPH C OF SAID GENERAL PROVISION WRITTEN CONFIRMATION FOLLOWS-
10. On July 17, 1951, the contracting officer sent a confirming letter to the plaintiff, by registered mail, which reads as follows:
Notice of Termination for Default
Dated: 17 1951
Contract No. DA 11-009 QM-4606
P/A: 7-3502 P128-08 A2110502 Sll-009
P/D CG 7-0007-00-1-07
Hi * * ❖
This will confirm our telegraphic Notice of Termination, dated 17 July 1951, wherein Contract No. DA 11-009 QM-4606 was terminated for default pursuant to General Provision 11 thereof as to all undelivered quantities of the contract supplies as of the receipt of said telegram. Contract No. DA 11-009 QM-4606, dated 18 December 1950, as amended, provides for the furnishing of 1,200,000 sets of Prefabricated Parts for Drum, Inflammable Liquid, (Gas), steel with carrying handle (5 gal.) at a unit price of $.97077 and a total *546 price of $1,164,924.00, F.O.B. Cars Contractors Plant. Terms: % of 1% — 20 days. Said contract further provides that the supplies will be delivered at the rates indicated below:
1951
16 Jan.-15 Feb. 16 Feb.-15 Mar. 16 Mar.-15 Apr.
100,000 100,000 250,000
16 Apr.-15 May 16 May-15 June 16 June-15 July
250,000' 250,000 250,000
As of the receipt of the telegraphic Notice of Termination, it has been determined that you had shipped 162,100 sets of the contract item which leaves an undelivered quantity of 1,037,900 sets of the contract item. You are therefore in default as to the said 1,037,900 sets under the delivery schedule of the contract.
You are hereby advised that your failure to deliver the 1,037,900 sets of the contract item specified by the contract is hereby treated as a breach of the contract on your part. In consequence of such breach of the contract on your part, the Government considers itself discharged of its obligations under the contract and in accordance with General Provision 11 of the contract, entitled “Default”, your right to proceed with the further performance of the contract is hereby terminated.
Pursuant to said General Provision 11, the supplies called for by the contract hereby terminated wifi be procured in the open market. Any excess costs involved will be charged against you. The Government reserves all rights and remedies provided by law or under the contract, in addition to charging excess costs.
You are advised that this Notice constitutes a Findings of Fact pursuant to General Provision 12 of the contract, entitled. “Disputes”, from which appeal may be taken as provided therein.
Priority rating DO-08 which was heretofore assigned to subject contract, is hereby revoked as to that portion of the contract which has been terminated herein. You are obligated to withdraw any extension of the rating made in connection with such terminated portion, pursuant to NPA Regulation 2.
(s) C. H. Johnston
C. H. Johnston,
Major, QMO, Oontractmg Oficer.
*547 11.' The plaintiff did not appéal, pursuant to the disputes clause (paragraph 12 of the General Provisions), from the termination for default under the contract in suit.
12. The plaintiff alleges hi its petition that the contracting officer urged the plaintiff not to appeal from the contracting officer’s action in terminating for default, and further stated that there would be no liability for excess costs. The plaintiff further alleges that it was told by the contracting officer that it could utilize all material and equipment, including tools and dies, in producing under a second contract for similar items which had been awarded to the plaintiff and as to which there was no default.
In its amended petition, the plaintiff makes additional allegations concerning the reasons no appeal from the termination action had been taken, including an allegation concerning a threat to cancel the second contract if an appeal were made in the contract in suit.
13. In view of the decision by the Supreme Court of the United States in United States v. Carlo Bianchi and Company, Inc., 373 U.S. 709, decided June 3, 1963, further findings will be limited to facts concerning alleged threats or promises by the contracting officer related, as alleged, to the plaintiff’s failure to appeal under the disputes clause.
14. The plaintiff’s president, Mr. Frank C. O’Neill, testified that foEowing receipt of the telegram of July 17,1951, and the confirming letter of the same date, a conference was held on or about July 23rd at the offices of the Chicago Ordnance District between himself, plaintiff’s vice president, Mr. E. J. Smith, Major Johnston (the contracting officer), Mr. P. H. KeHey, chief counsel at the Chicago Ordnance District Office, and others.. At this conference, according to O’Neill, Kelley became angry when shown a draft of a telegram (not transmitted), prepared by a member of a Chicago law firm for the plaintiff, denying, that the plaintiff was in default or that the Government had any right to terminate such contract for default.
According to O’Neill’s testimony, Kelley said in substance — if you people know what is good for you, you will not contest this termination for default, but that you will go *548 back and start mailing parts under your other contract; that he (Kelley) further said — that we have already shown consideration of your plight by giving you permission to ship cancelled parts under the later contract; and that he (Kelley) further said — that there will be no charge back of any excess costs by reason of repurchase. Also, according to O’Neill, Kelley’s parting statement was to the effect that if the plaintiff should contest the termination action, it would wish it had never decided to make parts for gasoline drums.
Mr. Smith was not called as a witness. At the time of trial, Mr. Kelley was deceased. Major Johnston did testify at the trial and his testimony was corroborated by a Miss Cunningham, an attorney in the Chicago Ordnance District Office. Johnston testified that no threats of any kind were made, nor were any promises made that caused the plaintiff to fail to appeal the termination action.
15. In testifying before the Armed Services Board of Contract Appeals, in a proceeding involving a claim under the later contract (not the contract in suit), when asked about conversations had with the contracting officer and Mr. Kelley in July 1951, O’Neill’s reply contained no reference to threats but only contained statements that both Kelley and Johnston had tried to be very helpful.
16. On the record herein, it is found that the plaintiff’s allegations as to threats and promises made by the contracting officer have not been proved. It is found, therefore, that neither the contracting officer, Johnston, nor his legal adviser, Kelley, made any threats or promises which might or could have formed a basis for the plaintiff’s decision not to appeal from the contracting officer’s findings of fact relating to the termination action.
17. In view of the foregoing findings, no finding is made herein as to damages.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover and plaintiff’s petition is dismissed.

 The number of units have been reduced by one-half to reflect the plaintiff’s portion of the contract.